J-S49025-17

NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37

| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| SEAN ZACHERY HORTON | |
| Appellant | No. 1765 WDA 2016 |

Appeal from the Judgment of Sentence Dated November 2, 2016
In the Court of Common Pleas of Beaver County
Criminal Division at No(s): CP-04-CR-0000452-2016

BEFORE: DUBOW, J., SOLANO, J., and FITZGERALD, J.[*]

MEMORANDUM BY SOLANO, J.:                    FILED DECEMBER 22, 2017

Appellant Sean Zachery Horton appeals from the judgment of sentence imposed after he was convicted, following a jury trial, of manufacture, delivery, or possession of a controlled substance with intent to manufacture or deliver it; intentional possession of a controlled substance by a person not regulated; and possession of marijuana.[1]  We affirm.

We state the facts from Appellant's jury trial in a light most favorable to the Commonwealth, as the verdict-winner.  See Commonwealth v. Fortune, 68 A.3d 980, 983 (Pa. Super.) (en banc), appeal denied, 78 A.3d 1089 (Pa. 2013); Commonwealth v. McFadden, 156 A.3d 299, 303 (Pa. Super.), appeal denied, 170 A.3d 993 (Pa. 2017).

_____

[*] Former Justice specially assigned to the Superior Court.

[1] 35 P.S. § 780-113(a)(30), (16) & (31), respectively.

On August 20, 2015, Agent Charles Hurst and Corporal Steven Kelch were performing surveillance on a controlled buy between a confidential informant and Alonzo Davis in New Brighton, Beaver County.  N.T., 7/12/16, at 37-38, 40, 101-02; Trial Ct. Op. at 2.  Agent Hurst is a narcotics agent with the Pennsylvania Attorney General's Office; prior to his current employment, he was a police officer in the City of North Charleston in South Carolina for a total of eight years, including six years as a narcotics detective.  Agent Hurst has also participated in undercover work.  Corporal Kelch has been a police officer with the New Brighton Police Department for eight years and is detached part-time to the Pennsylvania Attorney General's Office's Anti-Drug Task Force.

After the drug transaction, Davis, Appellant, and another individual left in a white automobile; Appellant was the only occupant in the back seat. N.T., 7/12/16, at 39, 41-42.  Agent Hurst and Corporal Kelch followed the white car but lost sight of it when it made a turn, although they eventually turned after it.  Id. at 67-70.  The white vehicle was finally located in the parking lot of a Dollar General store by James Cipriani of the Beaver Falls Police Department.  Trial Ct. Op. at 2; see also N.T., 7/13/16, at 49.  As of August 2015, Cipriani was a patrolman; by the time he testified in July 2016, he was a detective.  Id. at 42.  He has worked for the Beaver Falls Police Department since January 2010 and has served as a police officer since October 2005.  Id.; Trial Ct. Op. at 2.

Agent Hurst and Corporal Kelch continued driving, and, since the white automobile did not make any additional turns after they had first lost sight of it, Agent Hurst and Corporal Kelch ultimately saw the white car and Officer Cipriani's patrol vehicle as they approached the Dollar General store. N.T., 7/12/16, at 67-70. When they arrived at the Dollar General's parking lot, Agent Hurst informed Officer Cipriani that the third occupant that he had observed in the car — later identified as Appellant — was no longer in the vehicle. N.T., 7/13/16, at 54. As they were talking, Appellant "walk[ed] out of the front of the establishment, Dollar General." Id.

According to the testimony of Amy Cragle, the reason Appellant was at the Dollar General store was that she had called him earlier that day to ask him to sell her eighty dollars' worth of heroin. N.T., 7/13/16, at 6. Ms. Cragle met Appellant at Dollar General to make the purchase, but she testified that she then did not take possession of the heroin because she "was scared." Id. at 11.

After Appellant left the store, Agent Hurst and Corporal Kelch entered it and an employee showed them where Appellant had been. Corporal Kelch "noticed the smell of marijuana . . . a pretty strong smell." N.T., 7/12/16, at 55. Agent Hurst also "smelled . . . burnt marijuana . . . it was real strong." Id. at 113.

Corporal Kelch then viewed the store's surveillance video and observed Appellant pull "something" out of his right pocket and place it on a store shelf. N.T., 7/12/16, at 48, 52. Simultaneously, Agent Hurst searched the

- 3 -

store and located a burnt marijuana blunt, a second full marijuana blunt, a bag of heroin, and a "small piece of tinfoil also containing heroin" in a mosquito repellant container on the same shelf where the video had shown Appellant place the item he had removed from his pocket. Id. at 48, 114, 117; N.T., 7/13/16, at 64.

Meanwhile, after determining that Davis, the driver of the white vehicle, did not have a valid driver's license and could not produce a rental agreement for the vehicle, which was registered to the Budget car rental company, Officer Cipriani arranged for the vehicle to be towed. N.T., 7/13/16, at 56-57. Prior to having the vehicle towed, Officer Cipriani helped the driver complete an inventory tow sheet, which identifies items of value inside the vehicle before it is towed. Id. at 57-58. While looking inside the vehicle in order to complete the inventory tow sheet, Officer Cipriani found "a very small quantity" of marijuana in the door handle of the back seat. Id. at 58.

Appellant's jury trial began on July 12, 2016. Agent Hurst and Corporal Kelch "both testified to smelling a strong odor of burnt marijuana in the area where the drugs were located. In fact, it was that strong odor that drew them to the area of the Dollar General Store where they found the heroin and a whole blunt and a smoked blunt." Trial Ct. Op. at 2 (internal quotation marks omitted); see also N.T., 7/12/16, at 55, 113. Agent Hurst also testified about "discover[ing the] mosquito repellant" package

containing the burnt marijuana blunt, the full marijuana blunt, the bag of heroin, and the tinfoil wrapping of heroin.  Id. at 114.

Additionally, the Commonwealth also presented the testimony of Amy Cragle, who began her testimony by explaining that she is "a recovering heroin addict."  N.T., 7/13/16, at 7.  Ms. Cragle testified that "about two months" after she left the Dollar General, she was "pulled over in a traffic stop" and "was found in possession of heroin."  Id. at 14.  She continued that, while she was waiting in the New Brighton Police Station afterwards, Agent Hurst "recognized [her] from Dollar General" and "asked her what had happened" at Dollar General.  Id. She testified that she told Agent Hurst that she "was there that day to purchase heroin from Rico."  Id. at 15.  Ms. Cragle then identified Appellant as "Rico."  Id. at 17.

During trial, a "lab report [was] introduced into evidence as Commonwealth's Exhibit No. 6[.]"  Trial Ct. Op. at 1.  The report "did not establish that the substance was marijuana."  Id. at 1-2.  Officer Cipriani "testif[ied] that the Pennsylvania State Police Crime Lab will no longer test what is thought to be less than 32 grams of marijuana due to a backlog in the lab completing its work."  Id. at 2; see also N.T., 7/13/16, at 62-63.  Officer Cipriani also testified that the lab report indicated that the other substance found was confirmed to be heroin, totaling 9.5 grams.  Id. at 72.

Appellant was convicted on July 13, 2016.  "The Jury made the specific finding that [Appellant] possessed 9.5 grams of heroin with the intent to deliver the heroin."  Trial Ct. Op. at 1.

On August 24, 2016, Appellant was sentenced to 24-180 months' confinement.  On September 6, 2016, Appellant filed a motion for post-sentence relief that included a motion for modification of sentence and a motion for a new trial, contending that "the evidence presented by the Commonwealth was insufficient to support each element of the charges" and that the "verdict as to each of the charges [was] against the weight of the evidence presented at trial."  Mot. for Post-Sentence Relief, 9/6/16, at ¶¶ 3-4.  On November 2, 2016, the trial court re-sentenced Appellant:

> It was Ordered that [Appellant] serve not less than 24 months nor more than 60 months in a State Correctional Institution, followed by a consecutive period of 120 months of probation. [Appellant] was made eligible for Boot Camp.  The Sentence Order concludes by stating, "No further penalty is imposed at this time for the conviction at Count 3."[2]

Trial Ct. Op. at 1.  The trial court simultaneously denied Appellant's motion for a new trial.

That same day, Appellant filed a notice of appeal.  Appellant now raises two issues for our review:

> I.  The convictions for possession of heroin and possession with intent to deliver heroin were against the weight of the evidence, where the Commonwealth's case relied upon the testimony of witness Amy Cragle, an admitted heroin addict, who agreed to offer evidence against [Appellant] to avoid prosecution for possession of heroin.
>
> II.  The conviction for possession of a small amount of marijuana was not supported by sufficient evidence where the Commonwealth did not offer into evidence a crime lab establishing that the substance was marijuana.

_____
[2] Count 3 was possession of marijuana.

- 6 -

Appellant's Brief at 6.

Weight of the Evidence (Heroin)

Appellant first contends:

The convictions for possession of heroin and possession with intent to deliver heroin were against the weight of the evidence, where the Commonwealth's case relied upon the testimony of witness Amy Cragle, an admitted heroin addict, who agreed to offer evidence against [Appellant] to avoid prosecution for possession of heroin.

Appellant's Brief at 13. The Commonwealth answers that Appellant's "argument ignores the totality of the evidence introduced at [Appellant]'s trial." Commonwealth's Brief at 10.

Appellant does not contend that the evidence was insufficient to convict him. Instead, he contends that he should receive a new trial because the evidence on which the jury convicted him was weak. A motion for a new trial alleging that the verdict was against the weight of the evidence is addressed to the discretion of the trial court. Commonwealth v. Ramtahal, 33 A.3d 602, 609 (Pa. 2011) (citation omitted). "An appellate court, therefore, reviews the exercise of discretion, not the underlying question [of] whether the verdict is against the weight of the evidence." Id.

> The weight of the evidence is exclusively for the finder of fact[,] who is free to believe all, none or some of the evidence and to determine the credibility of the witnesses.
>
> Appellate review of a weight claim is a review of the exercise of discretion, not of the underlying question of whether the verdict is against the weight of the evidence. Because the trial judge has had the opportunity to hear and see the evidence presented, an appellate court will give the gravest consideration to the findings and reasons advanced by the trial judge when reviewing

a trial court's determination that the verdict is against the weight of the evidence. One of the least assailable reasons for granting or denying a new trial is the lower court's conviction that the verdict was or was not against the weight of the evidence and that a new trial should be granted in the interest of justice.

In order for a defendant to prevail on a challenge to the weight of the evidence, the evidence must be so tenuous, vague and uncertain that the verdict shocks the conscience of the court. . . . [A]n appellate court cannot substitute its judgment for that of the finder of fact.

Commonwealth v. Talbert, 129 A.3d 536, 545–46 (Pa. Super. 2015) (internal citations and quotation marks omitted; some formatting added), appeal denied, 138 A.3d 4 (Pa. 2016).

Here, the trial court's analysis of Appellant's weight of the evidence challenge, in its entirety, is as follows:

The record speaks for itself in this regard. The jury heard from four (4) witnesses, and after hearing arguments of counsel and instructions from the [trial c]ourt, the jury weighed the evidence presented and returned a unanimous verdict. The jury did have sufficient evidence as to all three (3) counts for which [Appellant] was convicted, and the jury weighed the evidence and returned a true verdict which must stand.

Trial Ct. Op. at 2-3.

Appellant essentially asks us to reassess Ms. Cragle's credibility and to reweigh the testimony and the evidence presented at trial. Appellant's Brief at 13-15. We cannot and will not do so. See Talbert, 129 A.3d at 546. The jury found credible Ms. Cragle's testimony, even though the jury was aware that Ms. Cragle is a recovering heroin addict, had intended to purchase heroin from Appellant, and was found in possession of heroin during an unrelated traffic stop. N.T., 7/13/16, at 6-7, 14-15.

Ms. Cragle's testimony was corroborated by other testimony and physical evidence. See Talbert, 129 A.3d at 545. Agent Hurst testified that he had located heroin in a mosquito repellant container on the same shelf where the store's surveillance video had shown Appellant place an item that he had removed from his pocket. N.T., 7/12/16, at 114. The laboratory report, Commonwealth's Exhibit 6, confirmed the presence of 9.5 grams of heroin in the container. See N.T., 7/13/16, at 72.

Thus, the trial court did not abuse its discretion by concluding that the verdict was not so contrary to the evidence as to shock the court's conscience. See Ramtahal, 33 A.3d at 609; Talbert, 129 A.3d at 545.

## Sufficiency (Marijuana)

Appellant's second challenge is: "The conviction for possession of a small amount of marijuana was not supported by sufficient evidence where the Commonwealth did not offer into evidence a crime lab [report] establishing the substance was marijuana." Appellant's Brief at 16. Appellant requested that the verdict "be vacated where the Commonwealth did not establish that [Appellant] intended to possess a controlled substance." Id. at 17. In response, the Commonwealth "submits that the opinion evidence offered by its police officers that identified the substance as marijuana based on its odor and appearance, in light of their extensive training and experience in narcotics, . . . was in its totality sufficient for the jury to conclude that [Appellant] possessed that drug." Commonwealth's Brief at 13.

Our standard of review for a sufficiency of the evidence challenge is well established:

> A claim challenging the sufficiency of the evidence presents a question of law. We must determine whether the evidence is sufficient to prove every element of the crime beyond a reasonable doubt. We must view evidence in the light most favorable to the Commonwealth as the verdict winner, and accept as true all evidence and all reasonable inferences therefrom upon which, if believed, the fact finder properly could have based its verdict.

McFadden, 156 A.3d at 303 (citations omitted); see also Fortune, 68 A.3d at 983.

> The trial court disposed of this issue as follows:

> Officer James Cipriani, a Beaver Falls Police Detective with ten (10) years of law enforcement experience, did testify that the Pennsylvania State Police Crime Lab will no longer test what is thought to be less than 32 grams of marijuana due to a backlog in the lab completing its work. At first blush, due to that testimony and that Exhibit, [Appellant's] issue would seem to be meritorious. That position, however, lacks merit when the testimony of the three (3) law enforcement officers is reviewed in total. [Agent Hurst and Corporal Kelch] both testified to smelling a "strong odor of burnt marijuana" in the area where the drugs were located. In fact, it was that strong odor that drew them to the area of the Dollar General Store where they found the heroin and a whole blunt and a smoked blunt. In addition, the jury heard testimony from Officer Cipriani that his search of the vehicle that this defendant arrived in revealed a "small amount of marijuana in foil found in the rear driver's side door handle". [Corporal] Kelch and [Agent] Hurst had previously testified that [Appellant] was the only occupant of the back seat of the vehicle. Although not tested in the lab, the jury had sufficient circumstantial evidence to support its verdict.

Trial Ct. Op. at 2. We agree. We add that Agent Hurst is a narcotics agent with the Pennsylvania Attorney General's Office and previously served six years as a narcotics detective, and that Corporal Kelch is detached to the

Pennsylvania Attorney General's Office's Anti-Drug Task Force.   N.T., 7/12/16, at 37-38, 101; Trial Ct. Op. at 2.   Their training and experience therefore gives them the ability to recognize marijuana visually and olfactorily.   Accordingly, we conclude that Appellant is not entitled to relief on this issue.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date:  12/22/2017